# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BETH ANN A.-D.,**[1]

      **Plaintiff,**

                              **Civil Action 2:24−cv−2476**
                              **Magistrate Judge Elizabeth P. Deavers**

    **v.**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

### OPINION AND ORDER

Plaintiff, Beth Ann A.-D., brings this action under 42 U.S.C. § 405(g) for review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition, (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 8). For the following reasons, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. § 405(g), for further administrative proceedings.

---

[1] Pursuant to General Order 22−01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## 1I.    BACKGROUND

Plaintiff protectively applied for SSI on August 6, 2021, alleging disability beginning May 5, 2021, due to seizure disorder, fibromyalgia, anemia, migraines, degenerative disc disease, hip pain, tics affecting her right upper extremity, and Post-Traumatic Stress Disorder. (R. at 587−93, 625.)[2]   Plaintiff's application was denied initially in December 2021, and upon reconsideration in March 2022.   (R. at 443−64, 470−80.)   Two hearings were held, one June 15, 2022 and a supplemental hearing on January 30, 2023.   Plaintiff, who was represented by counsel, appeared and testified via video at both hearings held by an administrative law judge. (R. at 261−91, 389−414.)   On May 2, 2023, Laura Chess (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.   (R. at 234−60.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.   (R. at 1−7.)   This matter is ripe for judicial review.

## II.    RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

---

[2] Plaintiff previously had filed applications for supplemental security income on April 15, 2014 and November 16, 2018. The April 15, 2014 application was denied at the initial level on August 12, 2014, and without a request for a hearing. The November 16, 2018 application was denied by ALJ decision dated May 4, 2021. (R. at 238, 415−435.)

## III.    ADMINISTRATIVE DECISION

On May 2, 2023, the ALJ issued her decision.   (R. at 234−60.)   At step one of the

sequential evaluation process,[3]  the ALJ found that Plaintiff has not engaged in substantially

gainful activity since August 6, 2021, the application date.   (R. at 240.)   The ALJ found that

Plaintiff has the following severe impairments: degenerative lumbar changes, bilateral hip

impingement with status/post bilateral arthroscopies, fibromyalgia, migraines, occipital

neuralgia, encephalopathy, cardiomyopathy, syncope, pseudo- or non-epileptic seizures, Tourette

or tic disorder, thyroid disorder, depressive disorder, anxiety disorder, attention-

deficit/hyperactivity disorder, post-traumatic stress disorder.   (*Id.*)   She further found that

Plaintiff does not have an impairment or combination of impairments that meets or medically

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.   *See* 20 C.F.R. §416.920(a)(4).   Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or
equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant
perform her or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the national
economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. at 241.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"), in pertinent part, as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following exceptions: standing, walking, and sitting each for no more than 2 hours at a time, and up to a total of 6 hours each in an 8−hour workday, with normal breaks. No more than frequent handling and fingering with the bilateral upper extremities. No more than frequent balancing, as defined in the Selected Characteristics of Occupations, as published by the U.S. Department of Labor (S.C.O.). No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. No more than occasional exposure to extreme cold, extreme heat, humidity, wetness, or vibrations. No more than  occasional concentrated exposure to atmospheric conditions, as defined in the S.C.O. [Plaintiff] can work in an environment with no more than a moderate noise level, as defined by the S.C.O. There can be no exposure to moving mechanical parts or work at high exposed places, and no operation of a motor vehicle. There can be no production-rate work, such as work on an assembly line. There can be no more than occasional interaction with supervisors, co-workers, and the general public. There can be no more than occasional changes in a routine work setting.

(R. at 244.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a general office clerk and pharmacy technician.   (R. at 251−52.)   Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a merchandise marker, collator operator or router.   (R. at 252−53.)   She therefore concluded that Plaintiff has not been under a disability since August 6, 2021, the date the application was filed.   (R. at 254.)

4

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

 Plaintiff sets forth one statement of error.   She asserts that the ALJ's residual functional capacity finding is not supported by substantial evidence due to the ALJ's failure to properly evaluate the prior administrative medical findings of Mary Hill, Ph.D. and Irma Johnston, Psy.D. pursuant to the requirements of 20 C.F.R. § 416.920c in relation to supportability and consistency.   (ECF No. 9 at PageID 2679−89.)

The Commissioner counters that the ALJ more than adequately explained why the state agency medical opinions were consistent with the evidence as a whole.   The Commissioner argues that while the ALJ did not specifically mention the magic word "supportability" in relation to these assessments, the ALJ's decision, when considered as a whole, reflects that she adequately explained this factor in finding the prior administrative medical findings partially persuasive.  (ECF No. 10 at PageID 2694−2705.)

The Court's analysis begins with a discussion of the regulations governing the ALJ's consideration of medical opinions. Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.920c (2017).   A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical

evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.
20 C.F.R. § 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs,
laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). "Other medical evidence is evidence
from a medical source that is not objective medical evidence or a medical opinion, including
judgments about the nature and severity of your impairments, your medical history, clinical
findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §
416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a
nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 416.913(a)(4).
"Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about
> what you can still do despite your impairment(s) and whether you have one or more
> impairment-related limitations or restrictions....
>
> (A) Your ability to perform physical demands of work activities, such as sitting,
> standing, walking, lifting, carrying, pushing, pulling, or other physical functions
> (including manipulative or postural functions, such as reaching, handling, stooping,
> or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as
> understanding; remembering; maintaining concentration, persistence, or pace;
> carrying out instructions; or responding appropriately to supervision, co-workers,
> or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or
> using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature
> extremes or fumes....

* * *

> (5) Prior administrative medical finding. A prior administrative medical finding is
> a finding, other than the ultimate determination about whether you are disabled,
> about a medical issue made by our Federal and State agency medical and

7

psychological consultants at a prior level of review (see § 416.1400) in your
current claim based on their review of the evidence in your case record, such as:

    (i) The existence and severity of your impairment(s);

    (ii) The existence and severity of your symptoms;

    (iii)  Statements about whether your impairment(s) meets or medically
    equals any listing in the Listing of Impairments in Part 404, Subpart P,
    Appendix 1; . . . .

    (v) . . . your residual functional capacity;

    (vi) Whether your impairment(s) meets the duration requirement; and

    (vii) How failure to follow prescribed treatment (see § 416.930) and drug
    addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate
medical opinions and prior administrative medical findings for claims filed on or after March 27,
2017." 20 C.F.R. § 416.920c. These regulations provide that an ALJ "will not defer or give any
specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior
administrative medical finding(s), including those from your medical sources." 20 C.F.R. §
416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior
administrative findings using five factors:   supportability, consistency, relationship of source to
claimant, specialization, and other factors tending to support or contradict a medical opinion or
prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are
supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Indeed, the regulations require an
ALJ to "explain how [they] considered the supportability and consistency factors for a medical

8

source's medical opinions or prior administrative medical findings" in a benefits determination

or decision and allows that the ALJ "may, but [is] not required to, explain how [they]

considered" the other factors. 20 C.F.R. §416.920c(b)(2). If, however, two or more medical

opinions or prior administrative medical findings are equal in supportability and consistency "but

are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20

C.F.R. § 416.920c(b)(3). In addition, when medical sources provide multiple opinions or

multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each

opinion or finding individually but must instead articulate how he considered the opinions or

findings from that source in a single analysis using the five factors described above. 20 C.F.R. §

416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it

considered evidence from non-medical sources. 20 C.F.R. § 416.920c(d).

      The applicable regulations provide the following guidance for how ALJs should evaluate

the "supportability" and "consistency" of medical source opinions and prior administrative

findings:

> (1) Supportability. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the more
> persuasive the medical opinions or prior administrative medical finding(s) will
> be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources and
> nonmedical sources in the claim, the more persuasive the medical opinion(s)
> or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)−(2). In practice, this means that the "supportability" factor "concerns

an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other

objective medical evidence." *Reuse v. Comm'r of Soc. Sec.*, No. 5:20−CV−1291, 2021 WL

1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96−2p, 1996 SSR LEXIS 9 (July 2,

1996) (explaining supportability and inconsistency); 20 C.F.R. § 416.927(c)(3), (4)

(differentiating "supportability" and "consistency"); 20 C.F.R. § 416.920c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-

March 27, 2017 regulations)).

      Here, Plaintiff asserts that the ALJ failed to evaluate the prior administrative medical

findings of Mary Hill, Ph.D. and Irma Johnston, Psy.D., State agency psychological consultants,

for supportability and consistency as required by 20 C.F.R. § 416.920c.

      Mary Hill, Ph.D. evaluated Plaintiff's mental impairments as part of the initial

determination on the claim on October 22, 2021.   (R. at 446-451.)   Dr. Hill found that Plaintiff

had the following severe medically determinable mental impairment: Depressive, Bipolar and

Related Disorders.   (R. at 447.)   Dr. Hill did not find that this impairment met or medically

equaled any Listed impairment, finding mild limitation in the ability to understand, remember, or

apply information, and moderate limitations in the ability to interact with others; concentrate,

persist, or maintain pace; and adapt or manage oneself when evaluating the "paragraph B"

criteria of the mental Listings.   (Id.)   Dr. Hill then provided an assessment of Plaintiff's mental

residual functional capacity (MRFC).   (R. at 450-451.)   Dr. Hill found Plaintiff retained the

ability to complete a variety of tasks in a setting with no requirement for rapid pace/quotas,

maintain superficial interactions with others with no customer service duties, and work in a

setting with occasional changes.   (Id.)

      In arriving at her findings regarding the severity of Plaintiff's mental impairments and

resulting MRFC, Dr. Hill's assessment references school records as well as mental health treatment records from Rocking Horse.   (R. at 446.)   In arriving at the limitations in social interactions, Dr. Hill stated that Plaintiff is moderately limited in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.   (R. at 451.)   In addition, she provided narrative explanations for each of her findings with regard to the four functional areas considered in arriving at Plaintiff's MRFC. (R. at 450-451.)   As it relates to social interaction limitations, Dr. Hill indicated that "Clmt is socially withdrawn.   Embarrassed by her pseudoseizures.   She is easily overwhelmed."   (R. at4 51.)

On reconsideration, Plaintiff's claim was evaluated by Irma Johnston, Psy.D. who, like Dr. Hill, assessed Plaintiff's medically determinable mental impairments, considered any applicable Listings, and made findings regarding Plaintiff's MRFC. (R. at 456-462.)   Dr. Johnston also considered additional evidence regarding Plaintiff's mental impairments consisting of updated mental health treatment records from Rocking Horse. (R. at 457.)   Dr. Johnston reached the same conclusions as Dr. Hill with regard to the evaluation of the "paragraph B" criteria of the Listings and Plaintiff's MRFC.   (R. at 458-459, 461-462.)

Turning to the portion of the ALJ's discussion at issue here, she had this to say about Drs. Hill and Johnston's opinions:

> [The ALJ is] partially persuaded by the opinions of Mary Hill, Ph.D., and Irma Johnston, Psy.D., given on behalf of DDD at the initial and reconsideration levels, respectively (Exhibits B4A at 4, 7−8, B6A at 4, 7−8). Both reviewing doctors opined that [Plaintiff] is capable of understanding and carrying out tasks at a range of complexity, but should not be subject to strict production or pacing requirements,

11

more than superficial social interactions, or an unpredictable work setting with more than infrequent routine changes. [Plaintiff] does have some limitations interacting with others, but superficial interaction is not supported by a preponderance of the evidence, as discussed above. Otherwise, I find these recommended levels of limitation reasonably consistent with the medical record, and have substantively adopted them as [Plaintiff]'s residual mental functional capacity. [The ALJ has] otherwise adapted the recommendations in the vocationally defined terms above in order to comply with regulatory requirements without being inconsistent with either Dr. Hill's or Dr. Johnston's opinions.

(R. at 250.)

Plaintiff's claimed error, relying on this excerpt, is straightforward. She maintains that the ALJ failed to discuss the supportability of these opinions. Specifically, Plaintiff contends that the ALJ did not discuss these medical source's references to "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021). Defendant admits that the ALJ did not specifically mention supportability in relation to the assessment of these prior administrative medical findings. (Def. Br. at 1, 11.) Defendant argues, however, that when the ALJ's decision is considered "as a whole," it reflects that the ALJ adequately explained the supportability factor. (Def. Br. at 1-6, 12.)

Extensive discussion is not required. Plaintiff has the better argument here. In reaching this conclusion, the Court is mindful of the challenges ALJ's face in distinguishing between the supportability and consistency factors when considering an opinion from a state agency consultant. As courts in this district have recognized, the distinction between these factors is relatively clear when the opinion is from a treating provider. *See, e.g., Shawn K. v. Comm'r of Soc. Sec. Admin.,* No. 2:24-CV-00380, 2025 WL 470167, at *6 (S.D. Ohio Feb. 12, 2025), *report and recommendation adopted,* No. 2:24-CV-00380, 2025 WL 662148 (S.D. Ohio Feb. 28, 2025).

12

Consultants, however, do not have their own treatment records and, instead, are required to review and rely upon documents in the administrative record to support their opinions. *Id.* Nevertheless, as discussed above, the language of the regulation is clear "that an ALJ must set forth a minimum level of articulation as to how he considered the supportability and consistency factors for a medical source's opinion." *Decorian P. R. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-657, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal quotation and citation omitted). Certainly, if the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. *Shawn K.,* at *6.

Here, in the administrative medical findings, Drs. Hill and Johnston clearly identify documents they relied upon to support their opinions, including school records and treatment records from Rocking Horse. This would have allowed the ALJ to address the supportability factor, but she failed to do so.

Instead, as the above excerpt demonstrates, the ALJ merely indicated that Plaintiff "does have some limitations interacting with others, but superficial interaction is not supported by a preponderance of the evidence, as discussed above. Otherwise, I find these recommended levels of limitation reasonably consistent with the medical record . . . ." While the ALJ does refer to a discussion "above," she does not even cite to any records that might indicate that she conducted a supportability determination in arriving at Plaintiff's RFC. This sentence of her discussion, also referring to consistency of the limitation "with the medical record" does nothing to clarify an intended supportability analysis. Thus, contrary to the Commissioner's argument, even accepting that the ALJ discussed the consistency factor adequately, which the Court does not

13

necessarily conclude, the failure to discuss the supportability factor requires remand.   *Whalen v. Comm'r of Soc. Sec.,* No. 1:24-CV-01928-SL, 2025 WL 1452713, at *17 (N.D. Ohio May 21, 2025), *report and recommendation adopted*, No. 1:24-CV-1928, 2025 WL 1756524 (N.D. Ohio June 25, 2025) ("An ALJ may discuss one adequately but not the other, thus requiring remand.").

Defendant cites to several Sixth Circuit cases to support the assertion that the ALJ's decision should be read as a whole to determine whether the consideration of the prior administrative medical findings was consistent with the regulations.   (Def. Br. at 5, 12) (citing *Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547, 551 (6th Cir. 2014); *Chicora v. Comm'r of Soc. Sec.,* 852 F. App'x 968, 970 (6th Cir. 2021); *Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 470-71 (6th Cir. 2006).)   These cases, however, no longer control because they applied the prior regulations for evaluating opinion evidence, which did not expressly require ALJs to explain their consideration of the supportability and consistency factors.   For more than eight years now, the regulations have imposed such a requirement.   20 C.F.R. § 416.920c(b)(2).

It is the job of the ALJ in the first instance to articulate their reasons.   *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021).   Indeed, it is the obligation of the ALJ "to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id.*   As such, by not explaining how he considered the factor of supportability when evaluating Drs. Hill and Johnston's opinions, the ALJ failed to meet the minimum level of articulation required by the regulations.   It may be that their opinions are well-supported by the evidence of record they reviewed.   But the Court has no way of knowing that based on the ALJ's decision.   That is, in the absence of the ALJ's proper articulation, the Court cannot trace the ALJ's path of reasoning.   *Amanda B. v. Comm'r of Soc.*

14

*Sec. Admin.,* No. 2:22-CV-4209, 2024 WL 278160, at \*4 (S.D. Ohio Jan. 25, 2024) (citing

*Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5111, 2022 WL 1044722, at \*6 (S.D. Ohio Apr.

25, 2022)).   Accordingly, this claim of error is well-taken and remand is justified.[4]

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Statement of Errors (ECF No. 9) is **SUSTAINED.**

The decision of the Commissioner is therefore **REVERSED** and this action is **REMANDED** to

the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative

proceedings.   The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to

sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**Date:   July 21, 2025**                       **s/ *Elizabeth A. Preston Deavers***
                                                          **ELIZABETH A. PRESTON DEAVERS**
                                                          **UNITED STATES MAGISTRATE JUDGE**

---

[4] Plaintiff makes a robust argument that that the ALJ's failure to properly evaluate the prior administrative findings of Drs. Hill and Johnston pursuant to the supportability criteria is not harmless error as the limitations they identified are more restrictive than those determined by the ALJ.   The Commissioner fails to address this issue in any meaningful way.   While the Court of Appeals for the Sixth Circuit has not yet addressed whether an ALJ's failure to explain his or her consideration of the supportability and consistency factors, as required by 20 C.F.R. § 404.1520c(b)(2), is harmless error, under these circumstances, the Court declines to address the issue here.